THOMPSON, Presiding 'Judge,
concurring in part and dissenting in part.
On appeal, as he did in his postjudgment motion, Stuart C. Dubose (“the husband”) argues that the evidence does not support the trial court’s determinations that, for the purposes of calculating child support, Allison T. Dubose (“the wife”) had an imputed monthly income of $5,000 and that he had an imputed monthly income of $6,300. Specifically, the husband states that the evidence indicated that the wife earned $5,500 a month and that he has had no income at all since 2008. He also states that no evidence was presented that would support a conclusion that he could earn $6,300 a month.
Portions of the procedural history of this case are helpful to an understanding of the issues related to- the calculation of the husband’s child-support obligation. In the first appeal of this case, this court dismissed the appeal in April 2011 because the appeal was not from a final-judgment. Specifically, we determined that the- trial court had not calculated the husband’s child-support obligation. Dubose v. Dubose, 72 So.3d 1210 (Ala. Civ. App. 2011) (“Dubose I”). The order -at issue in that appeal was entered on March 29, 2010. In Dubose I, we wrote:
“With regard to the calculation of child ' support in this case, the trial court’s order stated:
“ ‘Child support shall be paid to the [wife] in accordance with Rule 32[, Ala. R. Jud. Admin.,] modification tables effective January 1, 2009. The income for the parties will be[,] for the [wife,] her 2007 tax return showing a gross ineome of $70,292[,] and the [husband’s] gross income as defined by said Rule 32 shall be the average of [his]-'gross income for his 2006, 2007, and 2008 income-tax years. The [husband] will provide to the [wife]’s attorney these tax returns prior to the signing of this agreement for the calculation of child support. This ... figure will be divided by 12 for a monthly income that will be used along with the [wife’s] income to establish a monthly child support for [the minor child].
“‘An interim child-support amount shall be set at $400' per month for the parties’ minor child, by agreement of the [husband]. The court reserves the right to raise or lower this amount upon motion of any party and proof of [the husband]’s income.
“ ‘[The husband] - shall submit the above information within 30 days.’
“Thus, although the order required the husband to pay child support and provided the manner in which child support ultimately was to be calculated, the order did not provide the exact amount of the husband’s child-support obligation beyond providing for an ‘interim’ amount of child support pending the ordered calculations. We also note that a subsequent paragraph of the order provided that ‘neither party shall pay monthly child support payment[s].’ ”
72 So.3d at 1211-12.
Moreover, the record indicates that when she filed her complaint in 2008,- the wife filed a Form CS-42, part of the documentation. necessary under the child-support guidelines set out in Rule 32, Ala. R, Jud. Admin. That form, dated March 24, 2008, indicates that, at that time, the wife’s monthly gross income was $5,500 and the husband’s monthly gross income was $8,621.54.
In the third appeal of this case, we again reversed the judgment of the trial- court *1148 on, among other issues, the issue of child support. Dubose v. Dubose, 172 So.3d 233, 239-40. (Ala. Civ. App. 2014)(“Dubose III”). Regarding the child support awarded in the trial court’s judgment of March 3, 2014, we wrote;
“The husband contends th'át the trial court erred when it imputed ‘child support’ rather than imputing ‘income’ in the judgment. The husband asserts that the undisputed evidence indicated that, other than Social Security disability benefits, he had not earned any aneóme since 2009 and that, because of his physical condition, he cannot be gainfully employed. The husband contends that the wife did not present evidence to refute his inability to work.,
, “In the judgment, the trial court pointed out that the husband testified that he had no income, while other, evidence indicated that, up until 2008, the husband had earned income of approximately $2 million. Accordingly, the trial court ‘impute[d] child support in the amount of $645’ a month, which was to be applied retroactively from March 5, 2010, the date the trial court rendered an order (the order was not actually entered .until March 29, 2010) setting an interim amount of child support of $400 a month, until the child’s 19th birthday in November 2011.
“Rule 32(C)(2), Ala. R. Jud. Admin., sets forth the manner in which child •support is calculated, stating:’
“‘A total child-support obligation is determined by adding the basic child-support obligation, work-related childcare costs, and health-insurance costs. The total child-support obligation shall be divided between the parents in proportion to their adjusted gross incomes. The obligation of each parent is computed by multiplying the total child-support obligation by each parent’s percentage share of their combined adjusted gross income. The custodial parent shall be presumed- to spend his or her share directly on the child.’
“The judgment does not make clear whether the ‘imputed child support’ referenced in the judgment is the total child-support obligation or whether it is the amount thé trial court deemed to be the husband’s share. To complicate matters, the next paragraph of the judgment states that ‘neither party shall pay monthly child support payment,’ and it sets forth the procedure the trial court will use ‘if in the future it is determined [child support is] to be due'.’ The same paragraph indicates that the wife’s attorney had completed the income affidavits and other forms required pursuant to Rule 32, Ala. R, Jud. Admin. However, during the hearing on the issue of child support after this' court dismissed the husband’s first appeal in this- case, the wife’s attorney told the trial court he had not prepared the required forms but that he could prepare an income affidar vit to provide to the court. The husband states in his appellate brief that neither the wife nor the trial court submitted the forms required by Rule 32 for determining- child support. In our review of the voluminous record in this case, we could not locate an income affidavit from the wife or a standardized ‘child-support-guidelines form’ (Form CS-42), both of which are required to be included in the record. Rule 32(E), Ala. R. Jud. Admin, -The wife has-not provided this court with a brief on appeal; thus, the husband’s assertion that the proper child-support forms were not completed is not refuted.
“Even if the required forms are not contained in the record, this court may affirm a child-support award if we are able to determine, from the evidence in *1149 the record, how the trial court reached its child-support calculation. Hayes v. Hayes, 949 So.2d 150, 154-55 (Ala. Civ. App. 2006). In this case, however, this court is unable to determine from the evidence in the record how the trial court determined the husband’s child-support obligation. Moreover, we note that in its order of March 29, 2010, the trial court ordered the husband to pay interim child support of $400 a month for the parties’ youngest child. That child reached the age of 19 years in November 2011, more than two years before the final judgment was entered. Accordingly, we reverse the judgment as to this issue, and we remand the case for the trial court to enter a child-support judgment that complies with Rule 32, Ala, R. Jud. Admin., enabling this court, if a subsequent appeal is filed, to determine how the trial court calculated the husband’s child-support obligation and to provide a meaningful review as to the propriety of that obligation. C.M.M. v. S.F., 975 So.2d 975, 982 (Ala. Civ. App. 2007); Wilkerson v. Waldrop, 895 So.2d 347, 348-49 (Ala. Civ. App. 2004).”
Dubose III, 172 So.3d at 239-40.
In the instant appeal, the-husband has again challenged the child support ordered in the judgment entered on remand from Dubose III. In the judgment on remand, dated April 30, 2015, the trial court wrote:
“The [husband] has submitted a CS-41 form to assist the Court in making a child support determination. The [wife] has not. However, the record contains sufficient income information to determine the parties’ income and impute same. This Court imputes income to the [wife] of $5,000 (44%) monthly gross income. Additionally, the record contains .income and other relevant information sufficient for this Court to impute a minimum income to the [husband] of $6,300 (56%) monthly gross income. Therefore, the monthly child-support amount for the [husband] is $645 per month applied retroactively from March 29,2010.”
The main opinion concludes that “the evidence in the record does not support a finding that the husband can earn monthly income of $6,300 based on his current f circumstances.” 230 So.3d at 1143. I respectfully disagree.
At the 2008 hearing during which the wife testified as to her salary, which is the amount the husband wants the courts to use when calculating child' support, the husband testified that his net monthly income was approximately $4,800. The child-support form dated March 24, 2008, which the wife submitted when she filed the divorce complaint, indicated that, at that time, the husband’s monthly gross ihcome was $8,621.54. However, the husband contends that he is disabled as the result of injuries to his back and neck, which he suffered in 2003. In the accident, the recliner in which the husband was sitting collapsed, ejecting him and consequently breaking his neck and back. The husband claims that he has been ih constant pain since that time. It is also undisputed that, despite his disability, the husband campaigned for and was elected to the circuit bench in 2006 and took office in January 2007. The husband was removed, from his position as a circuit judge and was disbarred from the practice,of law in 2008. The husband asserts that , he has had no income since 2008. Dubose III, 172 So.3d at 236.
However, as set forth in Dubose III, there was evidence indicating that the husband had accrued assets of nearly $2 -million from 2006 through 2008, the year the divorce complaint was filed. The- -wife presented evidence indicating that, in 2007, the husband had deposits of $1,121,374,90 *1150 apart from his judge’s salary. Dubose III, 172 So.3d at 237-38. At the hearing, the husband denied knowing the source of all of the money, asserting that loan proceeds accounted for some of the deposits. Id. Despite the general rule that the obligor’s ability to pay is always considered when establishing or modifying an award of child support, Rule 32 provides a trial court the authority to impute income to a parent if that court finds that the parent is voluntarily unemployed or underemployed. See Rule 32(B)(5), Ala. R. Jud. Admin. (“If the court finds that either parent is voluntarily unemployed or underemployed, it shall estimate the income that parent would otherwise have and shall impute to that parent that income; the court shall calculate child support based, on that parent’s imputed income.”).
“ ‘The trial court is afforded the discretion to impute income to a parent for the purpose of determining child support, and the determination that a parent is voluntarily unemployed or underemployed “is to be made from the facts presented according to the judicial discretion of the trial court.” ’ Clements v. Clements, 990 So.2d 383, 394 (Ala. Civ. App. 2007) (quoting Winfrey v. Winfrey, 602 So.2d 904, 905 (Ala. Civ. App. 1992), and citing Rule 32(B)(5), Ala. R. Jud. Admin.).”
Bittinger v. Byrom, 65 So.3d 927, 934 (Ala. Civ. App. 2010).
In a footnote to the judgment on remand in which the trial court imputed income of $6,300' a month to the husband, the trial court stated:
“Testimony and evidence revealed that the [husband] has advanced degrees, farming, boat racing, investments, etc., that produce income for and on behalf of ■the [husband]. Testimony' also pointed out that the [husband] continued to be active despite his alleged physical condition prohibiting him from working; [the husband] continued to engage in physical activities and was/is not so physically disabled that he cannot hold a job.”
Thus, the trial court implicitly, if not expressly, found that the husband is voluntarily unemployed. “A trial court may validly impute income to a parent pursuant to Rule 32(B)(5) without expressly finding that the parent is voluntarily unemployed or underemployed.” G.B. v. J.H., 915 So.2d 570, 574 (Ala. Civ. App. 2005).
As mentioned, the husband contends that he is unable to work because he is disabled and has been disbarred. This court has held that a parent’s reasons for being unemployed are matters for consideration in determining his or her ability to pay child support. See, e.g., Alred v. Alred, 678 So.2d 1144, 1146 (Ala. Civ. App. 1996) (in a proceeding to modify child support, the fact that the father was unemployed and incarcerated was a matter for consideration in determining his ability to pay child support). However, if the parent “nevertheless has property or funds available to him [or her], support may be awarded therefrom.” Id. (citing Smith v. Smith, 631 So.2d 252 (Ala. Civ. App. 1993)). See also Rule 32(B)(2), Ala. R, Jud. Admin, (defining “gross income” to include “income from any source,” including, but not limited to, employment-related income, and income derived from sources such as dividends, interest, trusts, gifts, and prizes).
In the judgment of -March 3, 2014, the trial court expressly stated that it did not find believable the husband’s testimony that he did not have access to approximately $1.3 million in gold- and other precious metals. The trial court also found that there had been deposits of more than $2,302,234.39 made to the husband’s bank account from 2005 through 2008. Additionally, the trial court noted that, during the *1151 time the husband said he was disabled, he ran for circuit judge and was elected to that position. As discussed in Dubose III, those findings were' supported by the evidence.
Based .on the record before us, in my opinion, in entering the judgment on. remand, the trial court did not err in finding that the husband is able to work, albeit not as an attorney. I note that the gross monthly income of $6,300 a month that the trial court imputed to the husband is $2,321.54 less than the gross monthly income of $8,621.54 that the husband was-earning at the time the divorce complaint was filed. Additionally, the evidence indicates that the husband has sufficient assets from which child support may be awarded. Smith, supra. Accordingly, based on the facts of this case, I cannot say that the trial court abused its discretion in imputing gross monthly income of $6,300 to the husband.
. The main opinion also seems to suggest that any assets or resources the husband has from which he can pay child support must be incoming-producing assets that provide income at the rate.the trial court imputed to the husband. Id.
“A child has a fundamental right under our law to support from that child’s parents that the parents themselves cannot waive. State ex rel. Shellhouse v. Bentley, 666 So.2d 517 (Ala. Civ. App. 1995). ‘All minor children have a fundamental right to parental support and that right is deemed to be a continuing right until the age of majority.’ Ex parte State ex rel. Summerlin, 634 So.2d 539, 541 (Ala. 1993); see also Bank Independent v. Coats, 591 So.2d 56, 60 (Ala. 1991) (‘[Tjhe public policy of this state [provides] • that parents cannot abrogate their responsibilities to their minor children by mutual agreement between themselves so as to deprive their minor children of the support to which they are legally entitled.’).”
Hawkins v. Cantrell, 963 So.2d 103, 105-06 (Ala. Civ. App. 2007). Just as parents cannot waive child support by mutual agreement, I do not believe that a parent with significant assets can avoid his or her child-support obligation merely because those assets do not produce income. I agree with the Maryland Court of Special Appeals’ well-reasoned explanation as to why a trial court should have discretion to consider non-income-producing assets when determining child support:
“[I]f á parent voluntarily decreases his or her income in order to avoid support payments, a court may find that a parent has become voluntarily impoverished, and impute income based on assets readily adaptable to income ■ production. Alternatively, in instances where the income of a parent is not adequate to provide support to a child sufficient to meet the standard.of living established during the marriage, and the parent has assets that 'could be converted into- income-producing assets, a court might look to the parent’s assets to determine above-the-guidelines support. We do not agree, however, that the mere ownership of non-income-producing assets alone constitutes a basis for reliance upon those assets in determining child support. Moreover, the decision to devote assets to capital growth, rather than income production, should be within the discretion of a parent, as long as the children are provided reasonable support, consistent with that provided during the marriage or other relationship.”
Barton v. Hirshberg, 137 Md. App. 1, 20, 767 A.2d 874, 884 (2001)(emphasis added).
More recently, the Nebraska Supreme Court has also considered whether non-income-producing assets should be consid *1152 ered in determining child support. That court wrote:
“Other courts have recognized that the parties’assets—including those that are not currently producing income—are relevant to the support calculation.
“Courts generally factor non-ineome-producing assets into the child support calculation in one of two ways. First, courts sometimes impute to the parent’s income a hypothetical reasonable rate of return from a nonproducing or under-producing asset. The rationale is that funds devoted to unproductive assets have untapped earning potential. Courts do not have to defer to a parent’s investment decisions, and the parent’s choice to devote resources to growth instead of income must sometimes yield to the child’s best interests.
“The second way courts consider non-income-producing assets is as a reason to deviate from the presumptive child support formula. For deviations, the theory is that- parents should sometimes liquidate assets to meet their paramount obligation to support their children. Relevant factors include the obligor’s total wealth, the custodial parent’s total wealth, the children’s needs, and whether liquidating the asset would interfere with the obligor’s livelihood or ability to earn income.” • *
Stekr v. Beecham, 291 Neb. 883, 888-89, 869 N.W.2d 347, 351-52 (2015)(footnotes omitted).
In this case, the trial 'court found that the husband had hidden significant asséts. Those assets are currently not producing income.‘The husband should not be able to insulate his financial resources, which in this case appear to be considerable, simply because he elects- not to place those assets in income-producing ventures. Accordingly, I also disagree with the main opinion’s holding that, before the husband’s assets can be considered in determining child support, evidence must be presented “indicating that the assets could produce income at the rate imputed.” 230.So.3d at 1143.
Because I conclude that substantial evidence supports the trial court’s decision to impute $6,300 a month to the husband, I believe that the trial court’s failure to hold a hearing on the husband’s postjudgment motion as to this issue is harmless error.
The husband also challenges on appeal the trial court’s decision to impute income to the wife. The record indicates that, on June 17, 2015, approximately six weeks after the judgment on remand was entered, the wife filed child-support forms indicating that her monthly gross income was $5,000. On the CS-41 form, the wife’s attorney noted that the form was “prepared in accordance with income figures of [the wife] and [the husband] determined by Judge McMillan in Order on Remand dated April 30, 2015. Also in- accordance with Orders of this Court said amount of child support is retroactive to March 2010.” Furthermore, in her brief to this court in the current appeal, the wife again states that she filed the' CS-41 form “that conforms to her monthly gross income of $5,000 as determined by the trial court in the Order on Remand.”
The sequence for determining the amount .of child support to be awarded has béen reversed in this case. The trial court is to determine the amount of child support owed by reviewing the parties’ affidavits regarding the amount of money they earn. The parties are not to complete their forms based on the income the trial court “imputes” to them.
On appeal, the husband asserts that the trial court cannot impute income to the wife, when there is evidence of her income and there is no suggestion that -she is *1153 voluntarily unemployed or underemployed. I agree. Rule 32(C), Ala. R. Jud. Admin,, sets forth the way child support is to be calculated, using the combined monthly gross income of both parents. Rule 32(B)(5), Ala. R. Jud. Admin., allows the trial court to estimate or impute income “[i]f the court finds that , either parent is voluntarily unemployed or underemployed.” That rule further provides:
“In determining the amount of income to be imputed to a parent who is unemployed- or underemployed, the court should determine the employment potential and probable earning level of that parent, based on that parent’s recent work history, education, and occupational qualifications, and on the prevailing job opportunities and earning levels in the community.”
Rule 32(B)(5).
Because there is no contention or evidence to suggest that the wife is unemployed or underemployed, I agree with the conclusion in the main opinion that the trial court must calculate child support using the wife’s actual income. There .is no basis for imputing income to the wife in this case.
As to the amount' of income the trial court purported to “impute” to the wife, the record shows that, in the March 29, 2010, judgment, the trial court found that the wife’s 2007 gross annual income (the last full year before she filed for divorce in March 2008) was- $70,292. That annual income results in a monthly gross income of $5,857.66. At a hearing on April 7, 2008, the wife testified that she earned $325 a day doing title research and reports. Later in that same hearing, the wife said that she earned a net income of between $2,000 and $3,000 a month. She also acknowledged that her monthly income for 2007 ranged from a low of $5,200 to a high- of $7,150. Most months, the wife earned at least $6,000.
Because the wife improperly completed . her income affidavit to reflect the amount of income the trial court had imputed to her rather than stating her actual income, and because this court cannot determine how the trial court derived the figure of $5,000 to use as the wife’s gross monthly income, the record clearly demonstrates that the trial court errédin calculating the husband’s child-support obligation by imputing income of $5,000 a month to the wife. However, because the record clearly demonstrates the basis for the trial court’s error as to this issue, and.this .court can and should reverse the judgment for that reason, I believe that remanding the cause for the trial -court to reconsider the judgment in light of the facts set forth herein is a better alternative- in this casé than remanding the cause for the trial court to hold a hearing on the husband’s post-judgment motion.
This case has been in litigation since 2008, and there has yet to be a final, judgment of divorce that has been affirmed on appeal. Under the circumstances of this case, I would reverse the trial court’s judgment insofar as it determined child support, but I would provide a thorough explanation as to how the trial court erred in imputing , income rather than remand the cause for a hearing on the husband’s post-judgment motion. Therefore, I dissent as to this issue. As to the remaining issues addressed in the main, opinion,. I concur.